# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) Case No. 1:17CR00004 |
| v. | ) **OPINION AND ORDER** |
| | ) |
| **CHRISTOPHER MATTHEW MARSH,** | ) J<small>UDGE</small> J<small>AMES</small> P. J<small>ONES</small> |
| Defendant. | ) |

*Whitney D. Pierce, Assistant United States Attorney, Abingdon, Virginia, for United States; Matthew Hill, Assistant Federal Public Defender, Abingdon, Virginia, for Defendant.*

At the defendant's supervised release renovation hearing, the defendant asserted legal defenses to the alleged violations. This Opinion and Order resolves those defenses.

I.

The defendant, Christopher Matthew Marsh, was convicted in this court in 2017 for failing to register as a sex offender in violation of 18 U.S.C. § 2250(a) and sentenced to 30 months' imprisonment, with five years of supervision to follow. In 2021, after his release from custody, he was found to have violated his conditions of supervision; his supervision was revoked and he was sentenced to 12 months' imprisonment, to be followed by five years of supervision. His conditions of supervision included the following, among others:

>Mandatory Condition No. 1.  You must not commit another federal, state, or local crime.
>
>Mandatory Condition No. 4.  You must refrain from any unlawful use of a controlled substance.
>
>Special Condition No. 4.  Must not contact or communicate directly, or indirectly, with persons less than 18 years of age (minors). This includes communication by any means including verbal, written, telephonic, electronic, or other communications. The prohibition against communication with minors is intentionally wide-ranging, encompassing the transmission of any information, whether by audio, video, digital or other means. It includes, but is not limited to, any communications via the Internet, cellular phone, any cellular phone or computer application, text message, social media, social networking website, blog, peer to peer file sharing network or other method. This provision does not encompass minors working as waiters, cashiers, ticket vendors, and similar service positions with whom the defendant must deal in order to obtain ordinary and usual commercial services.

J. 3, 5, Aug. 25, 2021, ECF No. 66.

On March 27, 2023, a probation officer of this court filed a Petition for Warrant or Summons for Offender Under Supervision (Petition) seeking revocation of the defendant's supervision on the ground that he had violated the above-listed conditions.  The Petition alleged that on March 13, 2023, Marsh had inappropriately grabbed a 16-year-old female's leg making her very uncomfortable and "made a comment that she reminded him of his daughter."  Pet. 1, Violation No. 1, ECF No. 71.  The victim expressed that the touch was unwanted. It was also alleged that on March 22, 2023, the defendant again grabbed the victim's leg "inappropriately" and

that "the touch was unwanted." *Id.* at 2, Violation No. 2.  The Petition recited that this conduct was in violation of Special Condition No. 4, set forth above.

The Petition also alleged that on March 16, 2023, the defendant was found smoking what was suspected to be a marijuana pipe and he "submitted to a drug screen which verified the sample was positive for marijuana." *Id.,* Violation No. 3. This conduct was alleged to be in violation of Mandatory Condition No. 4.

The court granted the Petition, and the defendant was arrested.  On March 30, 2023, an Amended Petition for Warrant or Summons for Offender Under Supervision (Amended Petition) was filed.  The Amended Petition added the allegation that the alleged inappropriate touchings were also in violation of Mandatory Condition No. 1, in that they constituted the Virginia criminal offenses of assault and battery.

On April 19, 2023, the probation officer filed a Supervised Release Violation Report (Report). The Report repeated the violations contained in the Amended Petition, with the addition of a new violation reciting that "[o]n December 14, 2022, during a home visit Mr. Marsh admitted smoking marijuana to this officer and USPO Neese on or about December 14, 2022, to ease his pain."  Report 5, ECF No. 90.

A hearing on the request for revocation was held on April 26, 2023.  The evidence showed that the defendant, age 46, suffers from cerebral palsy, uses a wheelchair, and cannot care for himself alone.  While his history as a sex offender

and his disability made it difficult to place him in suitable housing, on February 8, 2023, the probation officer was finally able to obtain his admission to Heritage Hall, a nursing home in Clintwood, Virginia.  The victim, AS, is 16 years old and a high school student.  In addition to school, she works as a certified nursing assistant at Heritage Hall.  While she was working there on March 13, 2023, the defendant rolled up behind her in a hallway and grabbed her leg right above the knee, surprising her.  On March 22, 2023, he tried to do the same thing, but she saw his movement in time and avoided his hand.  At some point he told her that she looked like his daughter.  The incidents made AS uncomfortable and were unwanted.

The government also presented evidence from a nurse practitioner at Heritage Hall that the defendant had used marijuana at the facility on March 16, 2023, and that he had admitted his intentional touching of AS, in order to "scare her."  Finally, the probation officer supervising the defendant testified that on December 14, 2022, he had admitted to her and another probation officer his use of marijuana earlier that day.

The defendant presented no evidence.

Counsel for the defendant has moved to dismiss certain of the violations on the following grounds: (1)  There was no evidence that the defendant intended to harm the victim when he grabbed or attempted to grab her leg and thus there was no violation of Virginia criminal law; (2) there was no evidence that the defendant knew

that the victim was a minor; and (3) because the charge of marijuana use on December 14, 2022, was not contained in the Petition or the Amended Petition, it cannot be the basis for revocation, even if contained in the later Report.

II.

Assault and battery are common law crimes.[1]  Virginia law "is clear that the slightest touching of another . . . if done in a rude, insolent, or angry manner, constitutes a battery." *Kelley v. Commonwealth*, 822 S.E.2d 375, 380 (Va. Ct. App. 2019) (internal quotations marks, alteration, and citations omitted) (holding that grabbing a person's chin when attempting an unwanted kiss may constitute a battery).  In such circumstances, the actor's intent may be inferred, *id.,* and does not depend on the force applied, *Adams v. Commonwealth*, 534 S.E.2d 347, 468 (Va. Ct. App. 2000).

Virginia has merged the tort and criminal definitions of an assault. *Clark v. Commonwealth*, 676 S.E.2d 332, 336 (Va. Ct. App. 2009).  An assault is thus "an overt act both intended to cause and actually causing a reasonable fear of bodily harm in the victim." *Id.*  Every battery includes an assault, *Wood v. Commonwealth*, 140 S.E. 114, 115 (Va. 1927), and "[t]he intended injury may be to the feelings or mind, as well as to the corporeal person," *id*.

---

[1] Virginia statutory law does not define the crimes but rather fixes the punishment. Va. Code Ann. § 18.2-57.

I fully credit the testimony of AS, and thus conclude that she was the victim of the defendant's assault and battery as to the March 13 incident and assault as to the March 22 incident. Therefore, defense counsel's objection to Violations Nos. 2 and 3 are overruled.

### III.

The government also seeks revocation on the ground that the defendant's conduct toward AS violated Special Condition No. 4. The defendant objects on the ground that there is no evidence that he knew that she was a minor, as required by Special Condition No. 4.

The government relies on *United States v. Edwards*, 944 F.3d 631 (7th Cir. 2019), in which that court upheld a similar condition in the face of an argument that it was unconstitutionally vague on the ground, among others, that it lacked a scienter requirement, "which increases the risk that [the defendant] might violate the conditions unwittingly." *Id.* at 637. The court noted that such a requirement was unneeded in that "a person's age can be estimated on sight with enough accuracy to place someone in [the defendant's] position on notice of a need for caution and inquiry," particularly since the condition "grants [the defendant] leeway to engage in ordinary commerce without worrying about the age of the individuals with whom he is transacting business." *Id.* at 638. *See also United States v. Bee*, 162 F.3d 1232, 1235–36 (9th Cir. 1998) ("By prohibiting [the defendant] from having contact with

children and from loitering near places primarily used by children, the district court properly exercised its broad discretion in setting the terms and conditions of supervised release. Despite the fact that these conditions might, in the future, operate to restrict [the defendant's] freedoms of association and travel, he can, as he has said, reasonably be expected to err on the side of avoiding places that the probation officer or the court might deem unacceptable." (internal quotation marks, alterations, and citation omitted)). *Id.* at 1235–36.

As the Fourth Circuit stated in a prosecution for transporting a minor across state lines to engage in prostitution,

> The defendant's interpretation [of the statute], meanwhile, would strip the statute of its clear purpose: the protection of minors. If the prosecution were required to prove knowledge with regard to the victim's age, it would be the rare defendant who would not claim to have mistaken the victim for an adult. Imposing such a mens rea requirement would be tantamount to permitting adults to prey upon minors so long as they cultivate ignorance of their victims' age.

*United States v. Jones*, 471 F.3d 535, 540 (4th Cir. 2006).

In any event, I have had an opportunity to view the victim, AS, as she testified, and it is apparent that the defendant would have reasonably believed that she was likely a minor when he interacted with her. It is thus not unjust to hold him to the plain terms of the condition. For these reasons, I will deny the defendant's objections to Violations Nos. 4 and 5.

IV.

Finally, the defendant objects to Violation No. 1 on the ground that it was not included in the Petition or the Amended Petition. Federal Rule of Criminal Procedure 32.1, dealing with the procedures for revocation, does not include such a requirement. It requires only that the defendant receive "written notice of the alleged violation" and "disclosure of the evidence against the person." Fed. R. Crim. P. 32.1(b)(2)(A), (B). Both requirements were accomplished in the Report, received by counsel for the defendant six days before the hearing. It is not contended that counsel did not have time to prepare to meet the allegations of Violation No. 1. The simplicity of the facts supporting the alleged violation and the resulting limited nature of any preparation for it are obvious. I will overrule this objection.

V.

For these reasons, I find that the alleged violations are valid, and that the government has proved them by a preponderance of the evidence. The Clerk shall reschedule the revocation hearing.

It is so **ORDERED**.

ENTER: May 9, 2023

/s/  JAMES P. JONES
Senior United States District Judge